J. A53006/00

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                             :   PENNSYLVANIA
              Appellee     :

          v.            :

PAUL MCKERNAN,            :

           Appellant   :   No. 2814 PHL 1998

Appeal from the Judgment of Sentence July 16, 1998
In the Court of Common Pleas of Philadelphia County
Criminal Division at No. 9710-0612.

BEFORE: JOHNSON, TODD and BECK, JJ.

MEMORANDUM:

FILED FEB 16 2001

     In this appeal from the judgment of sentence for first-degree murder, appellant claims that the evidence was insufficient to support the verdict. He also asserts that his trial counsel was ineffective in several instances. We affirm the judgment of sentence.

     This case involved a confrontation between appellant and the victim, Mark Gibson, who at one time were roommates. Gibson moved in with appellant and appellant's mother for a brief period of time in 1997. Shortly after he moved out, Gibson returned to the house to retrieve a piece of cable television equipment. Appellant's mother informed Gibson that appellant was not home. Gibson came back to the residence at a later date. Accompanying him was his brother-in-law, John Rogers. Rogers testified for the Commonwealth and relayed the following events surrounding Gibson's death.

J. A53006/00

When Gibson finally made contact with appellant at his home, appellant refused to return the equipment because he claimed Gibson owed him money. The men began to argue and at some point, appellant grabbed an aluminum baseball bat. Gibson then retrieved a mechanic's screwdriver or crowbar from his own vehicle, walked toward appellant's car and told appellant, "If you're gonna smash the windows on my car, you better smash them all because I'm smashing every one on yours." Gibson then began to approach appellant and informed him that he was going to "take the bat from him." Appellant began to swing the bat at Gibson and the men began to struggle. After a brief bout of "pushing and shoving," the men "pushed apart from one another." Gibson told appellant that he would return for the cable box later. With that, Rogers walked over to the driver's side of Gibson's vehicle and started to get into the driver's seat so that he could drive away. He observed Gibson, with his back to appellant, reach to open the passenger door and then heard a loud thump. He saw Gibson on the ground and jumped out of the car to assist him. According to Rogers, appellant stated that he hit Gibson in the chest. Rogers, who noticed that Gibson was bleeding profusely and appeared "very seriously hurt," asked appellant to call an ambulance. Appellant replied: "Fuck him, he got what he deserved."

The medical examiner testified that Gibson died as a result of blunt force injuries. The injuries were consistent with "having sustained two

- 2 -

J. A53006/00

separate blows to his body with an aluminum baseball bat, one of those blows being behind the right ear and the other blow being to the small of the back. . . . [The impact behind the right ear] led to swelling of the brain or increased pressure which then cause[d] the vital centers of the brain stem to be pushed down and have their blood supply cut off, and once that happen[ed] there [was] no more heartbeat or respiration." Trial Transcript, 7/14/98, at 93. This testimony was corroborated by David Thompson, a witness called by the defense. Thompson testified that appellant hit Gibson with the bat in the back of the head while Gibson was attempting to get into his car.

Appellant testified in his own defense. He claimed that he did not attack Gibson from behind. Instead, he said that Gibson hit him first, that he feared for his life and that he hit Gibson in the chest, causing Gibson to fall and hit his head on the street.

The trial judge, sitting as fact finder without a jury, found appellant guilty of first degree murder and possession of an instrument of crime. This appeal followed.

Appellant claims that the evidence was insufficient to establish first degree murder. We disagree. We review sufficiency in the light most favorable to the verdict winner, in this case the Commonwealth. **Commonwealth v. Rios**, 546 Pa. 271, 684 A.2d 1025, 1028 (1996), *cert. denied*, 520 U.S. 1231 (1997). The evidence adduced at trial established

- 3 -

J. A53006/00

that Gibson never threatened appellant with the screwdriver and raised it only when he stood at appellant's car. Thereafter, Gibson told appellant he was leaving and would return for his equipment later. As Gibson turned away from appellant and began to get into his car, appellant twice struck him from behind with a baseball bat. One of the blows caught appellant behind his right ear and was of such impact that it caused his brain stem to be pushed downward. The force of the blows directly caused Gibson's death.

Appellant argues that because the incident "lasted seconds," because there was no evidence of planning, because the victim provoked him and because appellant called police, "there is the absence of specified intent to kill." Appellant's Brief at 15-16. However, the law is clear that the use of deadly force can establish the element of intent in a first-degree murder case. **Commonwealth v. Karenbauer**, 552 Pa. 420, 715 A.2d 1086, 1091- 92 (1998), *cert. denied*, 526 U.S. 1021 (1999). Here, appellant's use of an aluminum baseball bat on the victim's head with the amount of force testified to by the medical examiner was more than adequate to establish intent to kill. Further, the fact finder was entitled to believe all, part or none of the evidence and so appellant's version of events is entitled to no weight on appeal. **Commonwealth v. Montini**, 712 A.2d 761, 767-68 (Pa. Super. 1998). Instead, the court was free to believe the testimony of the witness who observed appellant attack Gibson from behind, after Gibson informed appellant that he was leaving and after Gibson turned his back and

- 4 -

attempted to enter his vehicle. Appellant's sufficiency claim is without merit.

Appellant further claims that counsel was ineffective for failing to challenge the weight of the evidence. He claims that counsel should have preserved a challenge to the weight of the evidence by filing a post trial motion asserting same. A weight claim necessarily involves credibility determinations and is granted in those rare instances when the trial judge determines that "the verdict was so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Perez**, 664 A.2d 582, 585 (Pa. Super. 1995)

As an appellate court, we cannot review a weight of the evidence claim unless the trial court has had the opportunity to do so. Our review focuses on the propriety of the trial court's assessment of the weight claim; we do not undertake an independent assessment of the evidence. **Commonwealth v. Widmer**, 560 Pa. 308, 744 A.2d 745 (2000). However, when a weight claim is brought in the context of ineffectiveness, there is no trial court assessment for our review.

In **Perez**, a panel of this court was presented with a similar set of facts. There, as here, trial counsel did not preserve a weight of the evidence claim. New counsel raised the issue as one of ineffective assistance of counsel and sought relief on direct appeal. This court held that because an appellate court may not consider the evidence directly, but instead is compelled to consider the propriety of the trial court's decision under an

J. A53006/00

abuse of discretion standard, the following rule must apply:

> [W]hen a weight claim is raised for the first time on appeal, an
> appellate court may address and reject it only when there is
> absolutely no record support for a defense verdict—that is, when
> the defendant has introduced no evidence, and the
> Commonwealth's evidence has no internal inconsistencies.

***Id.*** at 585.

The ***Perez*** court, noting that contradictory testimony was presented in that case, remanded the matter for an assessment of the weight claim by the trial court.[1]   If ***Perez*** controls here, a remand would be appropriate since defense evidence was presented at trial.    However, there is a significant difference between ***Perez*** and this case.   ***Perez*** was a jury trial whereas in this case the trial judge sat as fact finder.   Thus, unlike in ***Perez***, we are indeed aware of the credibility determinations reached by the trial court in this case.   It is not unreasonable for us to conclude that the trial court would not find the verdict shocking to its sense of justice since the court itself *rendered* the verdict.   Indeed, we have stated in another context

---

[1] The panel in ***Perez*** noted that a remand would not be necessary if the court had ordered the appellant to file a Statement of Matters Complained of on Appeal.  In that event, the appellant would have raised the claim and the trial court would have addressed it in its Rule 1925(b) Opinion, or the appellant would have failed to include the claim and the issue would have been waived.  The court observed:

> So long as trial courts properly require defendants to file
> statements of matters complained of on appeal and write
> thorough opinions, weight claims will either be timely raised and
> addressed or permanently waived.

***Id.*** at 586 n 6.  According to the docket, the trial court here did not order appellant to file a Rule 1925(b) Statement.

J. A53006/00

that a trial court is not permitted to reweigh its own credibility
determinations:

> Based on Pennsylvania case law, we find the trial court erred and
> the judgment of sentence must be vacated.  A post verdict court
> may not simply reweigh evidence *de novo* and change its mind.

**Commonwealth v. Fitten**, 657 A.2d 972, 973 (Pa. Super.), *appeal denied*,
542 Pa. 632, 665 A.2d 467 (1995).

We find **Perez** inapplicable here. Where the trial court sits as finder of
fact, observes the demeanor and appearance of the witnesses, listens to
counsels' closing arguments and ultimately renders a verdict rejecting the
defendant's theory of the case, defense counsel is not ineffective for failing
to challenge the weight of the evidence.  Such a claim has no arguable merit
and therefore cannot form the basis of an ineffectiveness claim.

Appellant next argues that counsel was ineffective for calling witness
Thompson.  As noted above, Thompson testified that appellant hit the victim
in the back of the head while the victim was turned away from appellant and
attempting to get into his car.  While we agree that this testimony was
indeed damaging, we do not agree that counsel was ineffective for offering
Thompson as a witness.

The record establishes that in his original statement to police,
Thompson said that the victim raised a crowbar up above appellant and that
appellant hit the victim while the victim was facing him.  The fact that
Thompson changed his testimony could not have been predicted by counsel.

Counsel did his best to impeach the witness with the prior statement, but Thompson insisted that Gibson only held the screwdriver in his hand and did not raise it to appellant. Further, Thompson stated that he was certain Gibson's back was turned when appellant struck him.

Counsel cannot be faulted for calling a witness who, on a prior occasion, gave statements in support of appellant's theory of the case. Rather, counsel's strategy of calling a witness to corroborate his client's testimony was eminently reasonable.

Appellant also alleges ineffectiveness in connection with counsel's failure to object to testimony given by the victim's mother. Mrs. Gibson testified that her son moved out of appellant's home because either appellant or his mother stole money from him. The Commonwealth insists that this testimony was admissible for the purpose of establishing the victim's state of mind and the "relationship between the parties preceding and on the day of the victim's death and for set[ting] forth the history of the events on trial." Appellee's Brief at 8. Appellant argues that it is evidence of prior, uncharged and unrelated crimes, making it inadmissible.

We need not consider whether the evidence was admissible under the Commonwealth's theories. Even if it was not, appellant cannot show prejudice such that a new trial is warranted. The evidence, supported by statements from two eyewitnesses, established that appellant struck the victim in the back of the head with an aluminum baseball bat while the

victim was attempting to leave the scene. Medical testimony confirmed that the blow was of such force as to cause the victim's brain stem to be pushed downward, cutting off the blood supply to the brain and causing death. The admission of Mrs. Gibson's statement did not affect the verdict in this case, particularly since a trial judge, and not a jury, sat as the finder of fact. **See** ***Commonwealth v. Harvey***, 514 Pa. 531, 526 A.2d 330 (1987) (where admissible evidence clearly supports verdict , we assume that trial judge sitting as fact finder will not be influenced by prejudicial remarks that would prompt new trial in case of jury verdict).

Appellant's final claim is that the trial judge erred in failing to recuse herself.   Recusal is appropriate where a judge's behavior appears to be biased or prejudicial. ***Commonwealth v. Benchoff***, 700 A.2d 1289, 1295 (Pa. Super. 1997).

On the second day of trial, before testimony began, the trial judge learned that the victim's family had a website that gave details of Mark Gibson's case.  Included on the Internet site were statements about the trial judge and her reputation for leniency. The court interviewed Mrs. Gibson and her son Scott Gibson outside the presence of appellant, but with counsel for appellant and the prosecutor present.   During the interview, the judge attempted to understand why the Gibsons posted the information on the website.  The court also offered to recuse herself from the case.  Ultimately, the Gibsons agreed that the trial should continue.

After this exchange, appellant's counsel spoke with appellant. He then reported to the court that appellant was uncertain about whether he wanted the trial court to proceed in light of the discussion with the victim's family. On counsel's suggestion, the court interviewed appellant. In an extensive colloquy that included an additional conference with counsel, appellant stated that he believed the court could be fair and that he wanted the trial to proceed. Appellant was specifically asked whether the decision to proceed was his own and he answered in the affirmative.

Appellant now claims that despite his explicit waiver of recusal, the trial court should have recused itself in any event. Among the things that appellant claims warranted recusal is a statement made by the trial judge characterizing the case as "a horrible murder," a reference to the fact that the Gibsons were fortunate to have an eyewitness, and the judge's description of herself as "a good Catholic" who was active in victims' rights.

Although in his statement of questions appellant characterizes the failure to recuse as trial court error, he converts his claim to one of ineffectiveness in the argument portion of his brief. Therein he asserts that counsel should have requested recusal upon hearing the court's statements to the Gibson family. Specifically, appellant claims that when the court addressed appellant on the issue of recusal and stated that she did not discuss the evidence in the case, counsel knew this was not true because he heard the court mention the eyewitness.

J. A53006/00

The record shows that counsel was indeed concerned about his client and raised this issue to the court. It was counsel who requested that the court address appellant in order to ascertain whether he wanted to go forward. In addition, counsel informed the court that he had spoken with his client and relayed to him the nature and content of the court's discussion with the Gibsons. Counsel told the court:

> I explained to Mr. McKernan what was going on. . . . These are his concerns, because on the internet it says that you are a lenient judge, and so forth, so on. You had the opportunity to discuss with the victim's family . . . what they said, and the fact that you mentioned Mr. Rogers [the eyewitness] and his testimony, [appellant] thinks that you may be constrained to lean over backwards . . .

Trial Transcript, 7/15/98, at 239.

After counsel's presentation the trial court engaged in a lengthy colloquy with appellant to insure that he wanted the court to proceed. The colloquy was marked by an additional private conversation with counsel and culminated in appellant's unequivocal statement that the decision to proceed was his own.

We find neither trial court error nor ineffective assistance of counsel on this record. Appellant's recusal claim fails.

Judgment of sentence affirmed.

**J. A53006/00**

Judgment Entered:

Prothonotary

Date: FEB 16 2001