J. S65015/04

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| PAUL McKERNAN, | : | No. 28 Eastern District Appeal 2004 |
| Appellant | : | |

Appeal from the PCRA Order, December 15, 2003,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. 9710-0612

BEFORE:  FORD ELLIOTT, BOWES, AND MONTEMURO,* JJ.

MEMORANDUM:                                         Filed: February 10, 2005

In this appeal from the denial of relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, appellant raises a single issue:

> Was the [appellant's] decision, mid-trial, to refuse the Trial Court's offer to recuse itself, a knowing, intelligent and voluntary decision and under all the circumstances was a knowing waiver of a constitutional right at the time that it was made and were trial counsel, appellate counsel and post conviction counsel all ineffective for failing to raise and brief this very precise issue?

Appellant's brief at 3.

We find this issue has been previously litigated, despite appellant's asseverations to the contrary; therefore, we affirm the order dismissing the petition.

---

* Retired Justice assigned to Superior Court.

J. S65015/04

In the panel memorandum addressing the issue appellant raised on direct appeal, this court observed:

> Appellant's final claim is that the trial judge erred in failing to recuse herself. Recusal is appropriate where a judge's behavior appears to be biased or prejudicial. **Commonwealth v. Benchoff**, 700 A.2d 1289, 1295 (Pa. Super. 1997).
>
> On the second day of trial, before testimony began, the trial judge learned that the victim's family had a website that gave details of Mark Gibson's case. Included on the Internet site were statements about the trial judge and her reputation for leniency. The court interviewed Mrs. Gibson and her son Scott Gibson outside the presence of appellant, but with counsel for appellant and the prosecutor present. During the interview, the judge attempted to understand why the Gibsons posted the information on the website. The court also offered to recuse herself from the case. Ultimately, the Gibsons agreed that the trial should continue.
>
> After this exchange, appellant's counsel spoke with appellant. He then reported to the court that appellant was uncertain about whether he wanted the trial court to proceed in light of the discussion with the victim's family. On counsel's suggestion, the court interviewed appellant. In an extensive colloquy that included an additional conference with counsel, appellant stated that he believed the court could be fair and that he wanted the trial to proceed. Appellant was specifically asked whether the decision to proceed was his own and he answered in the affirmative.
>
> Appellant now claims that despite his explicit waiver of recusal, the trial court should have recused itself in any event. Among the things that appellant claims warranted recusal is a statement made by the trial judge characterizing the case as 'a horrible murder,' a reference to the fact that the Gibsons were fortunate to have an eyewitness, and the

J. S65015/04

judge's description of herself as 'a good Catholic' who was active in victims' rights.

Although in his statement of questions appellant characterizes the failure to recuse as trial court error, he converts his claim to one of ineffectiveness in the argument portion of his brief. Therein he asserts that counsel should have requested recusal upon hearing the court's statements to the Gibson family. Specifically, appellant claims that when the court addressed appellant on the issue of recusal and stated that she did not discuss the evidence in the case, counsel knew this was not true because he heard the court mention the eyewitness.

The record shows that counsel was indeed concerned about his client and raised this issue to the court. It was counsel who requested that the court address appellant in order to ascertain whether he wanted to go forward. In addition, counsel informed the court that he had spoken with his client and relayed to him the nature and content of the court's discussion with the Gibsons. Counsel told the court:

> I explained to Mr. McKernan what was going on. . . . These are his concerns, because on the internet it says that you are a lenient judge, and so forth, so on. You had the opportunity to discuss with the victim's family . . . what they said, and the fact that you mentioned Mr. Rogers [the eyewitness] and his testimony, [appellant] thinks that you may be constrained to lean over backwards . . .

Trial Transcript, 7/15/98, at 239.

After counsel's presentation the trial court engaged in a lengthy colloquy with appellant to insure that he wanted the court to proceed. The colloquy was marked by an additional private

- 3 -

J. S65015/04

> conversation with counsel and culminated in appellant's unequivocal statement that the decision to proceed was his own.
>
> We find neither trial court error nor ineffective assistance of counsel on this record. Appellant's recusal claim fails.

***Commonwealth v. McKernan***, No. 2814 PHL 1998, unpublished memorandum at 9-11 (Pa.Super. filed February 16, 2001).

"A claim is previously litigated under the PCRA if, inter alia, the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2)." ***Commonwealth v. Bond***, 572 Pa. 588, 598, 819 A.2d 33, 38 (2002).

We recognize that in this case, appellant challenges trial counsel's ineffectiveness based upon a different theory; namely, that trial counsel was ineffective in failing to advise appellant the trial court had already prejudged the case by describing the killing as a horrible murder, thereby rendering appellant's decision not to ask the court to recuse itself unknowing, involuntary, and unintelligent. Appellant adds appellate and PCRA counsel's ineffectiveness in failing to raise trial counsel's ineffectiveness with regard to the voluntariness of appellant's decision. As appellant notes, the record is silent as to whether trial counsel apprised appellant of the court's remark; however, according to PCRA appellate counsel, logic dictates appellant would not have agreed to Judge Richette's continuing to hear his case if he had been aware of the comment. (Appellant's brief at 11.) Thus, appellant asks

J. S65015/04

this court, minimally, to remand for a PCRA hearing if we do not grant appellant a new trial.

Our supreme court has admonished repeatedly, nonetheless, that a PCRA petitioner may not seek relief based upon counsel's ineffectiveness by advancing a new theory on which to base that claim.  As that court opined in **Bond**, **supra**, "[I]t is well-settled that a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief, including allegations of ineffectiveness, to relitigate previously litigated claims."  **Id.** at 598, 819 A.2d at 38 (citations omitted).

Furthermore, as the **Bond** court continued, "The claims are separately and independently waived because, as appellant admits, he failed to raise them in the PCRA court."  **Id.** at 600, 819 A.2d at 39-40, citing Pa.R.App.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal) (other citations omitted).  Like the petitioner in **Bond**, appellant herein claims that "Notwithstanding the multiple waivers, appellant claims that the issues are properly before this Court because he asserts that all prior counsel were ineffective, including . . . counsel who represented him in the PCRA proceeding below."  **Id.**

Even if we were to agree with appellant that all prior counsel should have raised the claim he raises now, we would find he is not entitled to relief, as we do not find the element of prejudice necessary to a finding of ineffectiveness.  The fact that Judge Richette called the crime a horrible

- 5 -

J. S65015/04

murder did not close the door on appellant's claim of self-defense, which is, of course, a defense to a charge of murder. The judge made the comment prior to appellant's presenting this defense; therefore, we examine the judge's remarks "'to determine whether they indicate that the judge [was] so prejudiced or biased that h[er] mind [was] not open to conviction by the last evidence presented.'" **Commonwealth v. Owens**, 444 Pa. 521, 525, 281 A.2d 861, 863 (1971), quoting **Commonwealth v. Horn**, 140 A.2d 847, 850 (Pa.Super. 1958).

We have read the entire transcript and find no support for such a conclusion. Throughout both the Commonwealth's and the defense's presentation of their respective cases, the court requested repetition or further clarification of or expansion upon the witnesses' testimony. At the close of appellant's case, the trial court asked both attorneys to argue the issue whether the verdict should or should not be first degree murder based on recent case law from our supreme court and on a legislative amendment that allows baseball bats to be considered deadly weapons. (Notes of testimony, 7/16/98 at 554-573.) Basing the first degree murder conviction on the use of a deadly weapon on a vital part of the victim's body, the court found incredible appellant's testimony that he struck the victim in self-defense while the victim faced him, and only struck him once, on the side of his chest, when the medical evidence indicated the victim had been struck on the back of his head behind the right ear and across the small of the

J. S65015/04

back. We find support for the trial court's conclusion in our review of the evidence, and therefore find that the judge was not so prejudiced or biased that her mind was not open to conviction by the last evidence presented. **Owens**, **supra** at 525, 281 A.2d at 863 (citation omitted).

    Order affirmed.